# UNITED STATES DISTRICT COURT
for the
Northern District of Texas
Dallas Division

United States of America )
v. )
NATHAN DONALD PELHAM )  Case No. 3:23-MJ-386-BK
)
)
)
)

*Defendant(s)*

**FILED**
**April 18, 2023**
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  April 12, 2023  in the county of  Hunt  in the  Northern  District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of Firearm |

This criminal complaint is based on these facts:

See attached affidavit of Special Agent Jeffrey Cotner, Federal Bureau of Investigation.

☒ Continued on the attached sheet.

*Complainant's signature*

Jeffrey Cotner, Special Agent, FBI
*Printed name and title*

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1.

Date: 04/18/2023

*Judge's signature*

City and state:  Dallas, Texas   RENÉE HARRIS TOLIVER, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHAN DONALD PELHAM | 3:23-MJ-386-BK<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINT**

I, Jeffrey Cotner, having been duly sworn do depose and state the following:

1. I have been employed as a Special Agent of the Federal Bureau of Investigation (FBI) since November 2006, and I am currently assigned to investigate domestic terrorism. While with the FBI, I have participated in the investigation of individuals and organizations involved in various white-collar crimes, violent crimes, crimes against children, and terrorism. I have participated in a variety of methods of investigation, including but not limited to, electronic and visual surveillance, general questioning of witnesses, the use of search warrants, confidential informants, collection of evidence, financial and telephone toll analysis and undercover operations. I have been a certified firearms instructor since May 2012.

2. The facts comprising the basis for this affidavit are personally known by me or have been relayed to me directly and indirectly by others familiar with this investigation including FBI personnel, and other law enforcement officers, as well as my review of footage from law enforcement officer's body worn cameras. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I

have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are necessary to establish probable cause for the complaint sought.

3. This affidavit is submitted to show that there is probable cause to believe that Nathan Donald Pelham ("Pelham") has violated the following statute in the Northern District of Texas: 18 U.S.C. § 922(g)(1), which makes it a crime for a convicted felon to possess a firearm.

## FACTS IN SUPPORT OF PROBABLE CAUSE

4. On April 12, 2023, I contacted Pelham by telephone to advise him there was a federal misdemeanor warrant for his arrest and that he needed to self-surrender on April 17, 2023, to which he agreed.

5. At approximately 7:45 p.m. on April 12, 2023, Deputy J.W. from the HCSO was dispatched to Pelham's residence for a welfare check in response to a call from Pelham's father stating that Pelham was threatening suicide and that he had a gun. Deputy J.W. was informed prior to arriving at Pelham's residence that Pelham had "2 full extradition warrants out of FBI Dallas."

6. Deputy J.W. arrived at Pelham's residence at approximately 8:38 p.m. Additional HCSO personnel arrived shortly thereafter. Upon arrival, the house was dark. Deputy J.W. turned on his emergency lights to indicate that he was a police officer in case Pelham was home. After speaking with a neighbor, Deputy J.W. saw a white male (who he later identified as Pelham) standing by the doorway of the residence. Due to the nature of the call, Deputy J.W. pulled out his Hunt County issued patrol rifle and held

**Affidavit in Support of**
**Criminal Complaint—Page 2**

cover toward the door where he observed Pelham. A short time later, Deputy J.W. observed a young female exit the home. Deputy J.W. put the child in his patrol car for safety.

7. After putting the child in the patrol car, Deputy J.W. heard gunshots coming from inside the residence. Deputy J.W. reported that the gunshots were spread out in time and that they were not towards the HCSO personnel. Deputy J.W. moved his patrol car away from the front of the residence for additional safety. Deputy J.W. maintained cover and heard an additional gunshot come from inside the residence but not towards HSCO personnel.

8. At approximately 9:38 p.m., Pelham's father arrived on scene. Deputy J.W. heard another gunshot and reported that "the bullet from this gunshot came in so close proximity to myself that I could hear the distinct whistling sound as the bullet traveled by me and then strike a metal object to my right side."

9. Deputy J.W. was informed by other officers on scene that there were "a few times" that Pelham came out of his residence to talk with law enforcement before going back inside. One such officer, Deputy N.W. of the HCSO, reported that she saw Pelham exit his residence "while yelling and began pacing on his porch." Deputy N.W. reported that she believed Pelham "was holding his phone in his right hand and could see an unknown object in his left hand" which she later "observed … to be a black handgun." Deputy N.W. reported that Captain R.S. of the HCSO "who was utilizing a pair of binoculars, confirmed Pelham was holding a black handgun that was in a holster in his left hand." Deputy N.W. reported, "Pelham then removed the handgun from the holster

**Affidavit in Support of**
**Criminal Complaint—Page 3**

with his right hand and held it down by his right leg, which was confirmed by Captain [R.S.] who was continuing to watch Pelham through his binoculars. Pelham then began waving the handgun around in front of him, toward where deputies were positioned. After a short time Pelham went back inside his residence."

10. I arrived on scene at approximately at 10:37 p.m. My goal in going to Pelham's residence was to assist the HCSO in their welfare check and to execute the federal arrest warrant with assistance from the HCSO. A few minutes after I arrived, I heard approximately six to seven rounds fired coming from the area of Pelham's residence. However, I was not in position to see Pelham at that time.

11. At approximately 10:46 p.m. Deputy N.W. "observed Pelham exit his residence on the west side of the structure and while holding a handgun in his right hand, extend his right arm straight out away from his body while raised slightly above shoulder level with the handgun pointed westward." Deputy N.W. reported that "Pelham then fired off multiple rounds before going back inside the residence."

12. HCSO personnel left Pelham's residence at approximately 12:21 a.m. on April 13, 2023, without making an arrest.

13. Between April 17, 2023, to April 18, 2023, I reviewed the body worn camera footage from Deputy J.W. and Deputy N.W. who were on scene at Pelham's residence during the evening of April 12, 2023. In the video footage, responding officers, including those wearing the cameras, those positioned near them, and those who can be heard over police radio, make several contemporaneous statements about hearing gunshots, seeing Pelham with a firearm in his hand, hearing bullets "whiz" by them, and

**Affidavit in Support of**
**Criminal Complaint—Page 4**

hearing bullets hitting objects near them.  The sound of gunshots can also be heard in the video footage.  Deputy N.W. can also be heard asking Pelham multiple time to put his gun down.

14. According to Pelham's wife, there was a 9mm pistol in their house that they kept in a bag in their bedroom.  Pelham's wife knew where it was in case she ever needed it for self-defense if Pelham was not home.  The only other gun that she knew of in the residence was a pellet gun.  Pelham's wife said there were three boxes of ammunition in a navy-blue purse in their closet and estimated that each box held 50 rounds.  According to Pelham's wife, Pelham was the only person in the house after he released their daughter to HCSO/family members.

15. On April 14, 2023, FBI agents executed a search warrant at Pelham's residence in the Northern District of Texas.  A blue purse containing a Smith & Wesson 9mm pistol model SD9 VE, bearing serial number FXZ2704 was recovered with a round in the chamber and a partially loaded magazine.  A second magazine containing 9mm rounds was also recovered along with four boxes of ammunition, one full and the others partially full.  The blue purse containing the pistol, magazines and ammunition was located in the closet of the master bedroom.  Agents also observed several holes in the walls of the residence that were consistent with the size of a 9mm round.

16. On April 14, 2023, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent Joseph Mokos, an Interstate Nexus Expert, reviewed detailed firearm information in reference to the Smith & Wesson, Model SD9 VE, 9mm pistol, serial number FXZ2704 recovered by FBI Special Agents.  ATF Special Agent Mokos

**Affidavit in Support of**
**Criminal Complaint—Page 5**

determined the Smith & Wesson, Model SD9 VE, 9mm pistol, serial number FXZ2704 was not manufactured in the State of Texas and has, by virtue of its presence in Texas, traveled in or affected interstate or foreign commerce.

17. A search of Pelham's criminal history shows he was convicted of a state jail felony for Evading Arrest/Detention with Vehicle. The offense occurred on September 6, 2003, cause number 380-82244-03, in Collin County, Texas. On December 16, 2003, Pelham was sentenced to five years probation. On October 7, 2004, Pelham was charged with probation revocation and was sentenced to two years confinement in state jail.

18. Based on the foregoing, I submit that there is probable cause to believe that Pelham has violated 18 U.S.C. § 922(g)(1).

_____
JEFFREY COTNER
Special Agent, FBI

Attested to by the applicant on April 18, 2023, via reliable electronic means, in accordance with the requirements of Fed. R. Crim. P. 4.1.

_____
RENÉE HARRIS TOLIVER
United States Magistrate Judge
Northern District of Texas